**Laura WILSON, Individually and as Next Friend for Her Mentally Challenged Child, Zola Wilson Plaintiff,**

v.

**Joe VICKERY, Individually and in His Official Capacity as Investigator, Hardin County Sheriff's Department, and Ed Cain, Individually and in His Official Capacity as Hardin County Sheriff, and Hardin County, Texas Defendants.**

No. CIV.A.1:01–CV–702 (TH).

United States District Court, E.D. Texas, Beaumont Division.

Oct. 17, 2002.

Laura Wilson, Silsbee, TX, pro se.

Harold V. Dutton, Jr., Law Office of Harold V. Dutton, Jr., Houston, TX, for Laura Wilson.

Frank David Calvert, Benckenstein & Oxford, Beaomont, TX, for defendant.

## MEMORANDUM OPINION AND OR-DER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDG-MENT

HEARTFIELD, District Judge.

Before the Court is *Defendants' Motion for Summary Judgment* [Clerk's Doc. No. 18]. Having considered the motion, the summary judgment evidence, and the ap-plicable law, the Court is of the opinion that the motion should be granted.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

This is a civil rights case arising out of the arrest of Zola Wilson. On November 27, 2000, Officer Joe Vickery, an investiga-tor with the Hardin County Sheriff's De-partment, and agent of the Narcotics Task Force, purchased a substance represented to be crack cocaine from an unidentified suspect. The drug field test indicated that the substance was cocaine. Unbeknownst to the suspect, this transaction was video-taped.

On January 19, 2001, Officer Vickery positively identified Zola Wilson as the person involved in the transaction. Officer Vickery made this identification from Zola Wilson's high school yearbook and school I.D. Officer Vickery's identification was corroborated by Don MacLeroy, the Sils-bee Highschool assistant principal, after he viewed a videotape of the transaction. Two other officers, Brandon Davis and Larry Gilder (Zola Wilson's cousin and neighbor), also identified Zola Wilson as the suspect after viewing the videotape.

This evidence was presented to the Har-din County grand jury and Zola Wilson was indicted on January 24, 2001. That same day, a warrant was issued for his arrest. The warrant was executed on Jan-uary 25, 2001 and Zola Wilson was taken into custody. For reasons not before the Court, the charges against Zola Wilson were subsequently dismissed.

Based on the foregoing, Plaintiff Laura Wilson brings this suit individually and on

---

1. Plaintiff did not file a response to the mo-tion for summary judgment. Pursuant to the LOCAL COURT RULES FOR THE EASTERN DISTRICT OF TEXAS, the response to a motion summary judgment must be filed within 15 days from the date the motion is served. As such, Plain-tiff's response was due to be filed on August 20, 2002. Not having received the response, the Court directed Plaintiff by order dated September 6, 2002 to file a response to the motion not later than September 13, 2002. To date no response has been filed.

behalf of her son, Zola Wilson, whom she claims is mentally incompetent. Plaintiff seeks recovery for alleged violations of Zola Wilson's federal civil rights pursuant to 42 U.S.C. § 1983. Invoking supplemental jurisdiction, she further alleges violations of his rights under the Texas Constitution. She brought suit against Hardin County, Officer Vickery in both his individual and official capacities, and Hardin County Sheriff Ed Cain in both his official and individual capacities.

On August 2, 2002, defendants filed *Defendants' Motion for Summary Judgment* [Clerk's Doc. No. 18]. As previously noted, Plaintiff did not respond to the motion in spite of this Court's order extending the submission date and directing her to do so.

## LEGAL STANDARD—MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment procedures empower the court to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The purpose of summary judgment proceedings is to dispose of factually and legally unsupported claims and defenses while protecting

parties' respective rights to trial on disputed issues. *Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. at 2553. Disposition by summary judgment is not a "disfavored procedural short-cut, but rather, an integral part of the FEDERAL RULES as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of an action.' " *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting FED. R. CIV. P. 1).

As an initial matter, the burden is on the party seeking summary judgment to demonstrate that there is no genuine issue as to any material fact.[2] *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In so doing, the movant need not negate the elements of the non-movant's case, but rather, may establish that there is insufficient evidence to support an essential element of the plaintiff's claim. Summary judgment is also appropriate where the movant conclusively establishes all elements of an affirmative defense. *See Crescent Towing & Salvage Co. v. M/V Anax,* 40 F.3d 741, 744 (5th Cir.1994).

The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1356. To carry this burden, the nonmovant must "go beyond the pleadings, and by her own affidavits, or by the depositions, answers to interrogatories and admission on file, designate specific facts showing that there is a genuine issue of fact for trial." *Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also Rizzo v. Children's World Learning Ctrs., Inc.,* 84 F.3d 758, 764 (5th Cir. 1996); *McGann v. H & H Music, Co.,* 946

---

**2.** For purposes of summary judgment, an issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmovant; a fact is "material" if its resolution under substantive law in favor of one party might affect the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

F.2d 401, 408 (5th Cir.1991). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law preclude entry of summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. The party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). It is not incumbent on the Court to sift through the entire record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Ten. Gas Pipeline So.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, pursuant to the LOCAL COURT RULE 56(C), the moving party's facts as claimed and supported by admissible evidence are deemed admitted as true unless controverted by the non-movant by way of a "Statement of Genuine Issues".

When considering motions for summary judgment, courts must resolve all reasonable doubts in favor of the nonmoving party. *General Elec. Co. v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997). "[T]he nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 1551–52, 143 L.Ed.2d 731 (1999). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions.'" *Id.*

Evidence may be considered on a Rule 56 motion to the extent that it is not based on hearsay or otherwise excludable at trial. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987).

In light of this procedural framework, the Court now considers the merits of the motion for summary judgment.

## ANALYSIS

### A. Hardin County Sheriff's Department Not A Proper Defendant

■ Plaintiff filed suit against Ed Cain in his official capacity as the Sheriff of Hardin County, Texas. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 165, 105 S.Ct. at 3105.

On summary judgment, defendants contend that the Hardin County Sheriff's Department is not a proper defendant because it is not a legal entity capable of being sued. The Court agrees.

■ The capacity for a governmental entity to sue or be sued "shall be determined by the law under which it was organized." FED.R.CIV.P. 17(b). Under Texas law, county sheriff departments are not, as a general rule considered to be legal entities capable of being sued. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir.1991); *see also Thomas–Melton v. Dallas County*, 39 F.3d 320, 1994 WL 612546 (5th Cir.1994). It is only where the enabling entity—the county, in the case of the sheriff's department—confers such authority upon servient agencies that courts may recognize their "jural authority." *Id.* Because there is no evidence before the Court that the Hardin County Sheriff's

Department enjoys a separate legal existence, it is not a proper party to this suit.[3]

As such, Plaintiff's claims against Hardin County Sheriff's Department must be dismissed.

## B. No Viable Damage Claim for Violations of the Texas Constitution

■ Plaintiff seeks damages for alleged violations of Zola Wilson's civil rights as protected by the Texas Constitution. *Plaintiff's Original Complaint* at ¶ 5. In her complaint, Plaintiff references Article I, Section 9 and Article IX, Section 1 of the Texas Constitution. *See Plaintiff's Original Complaint* at ¶¶ 1–5. Article IX, Section 1 of the Texas Constitution does not address civil rights, but rather, addresses the legislatures power to create counties.[4] Article I, Section 9 provides:

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing,

shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation. Because Plaintiff seeks redress for alleged violations of Zola Wilson's civil rights arising out of his arrest, this Court presumes that Plaintiff seeks redress for violations of Article I, Section 9 rather than for any alleged violation of Article IX, Section 1.

Defendants seek summary judgment on the ground that no claim for damages arising out of alleged violations of the Texas Constitution exists. Furthermore, Defendants contend that even if Plaintiff can maintain suit for violation of Article I, Section 9 of the Texas Constitution, such claim fails on the merits because the summary judgment evidence establishes that the arrest was executed pursuant to a lawful warrant supported by probable cause. The Court agrees with both grounds for summary judgment.

■ Generally speaking, damage[5] claims for violation of the Texas Constitution are not viable. This is so because

---

**3.** When a party names a defendant without the legal capacity to be sued, courts should permit amendment of the complaint so that the correct defendant can be named. *See Darby,* 939 F.2d at 314; *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). That is not necessary here, because Plaintiff has named Hardin County, Texas as a defendant. As such, there is no need for the Court to allow amendment prior to considering the merits of defendants' motion for summary judgment.

**4.** Article IX Section 1: "The Legislature shall have power to create counties for the convenience of the people subject to the following provisions: (1) Within the territory of any county or counties, no new county shall be created with a less area than seven hundred square miles, nor shall any such county now existing be reduced to a less area than seven hundred square miles. No new counties shall be created so as to approach nearer than twelve miles of the county seat of any county from which it may in whole or in part be taken. Counties of a less area than nine

hundred, but of seven hundred or more square miles, within counties now existing, may be created by a two-thirds vote of each House of the Legislature, taken by yeas and nays and entered on the journals. Any county now existing may be reduced to an area of not less than seven hundred square miles by a like two-thirds vote. When any part of a county is stricken off and attached to, or created into another county, the part stricken off shall be holden for and obliged to pay its proportion of all the liabilities then existing, of the county from which it was taken, in such manner as may be prescribed by law. (2) No part of any existing county shall be detached from it and attached to another existing county until the proposition for such change shall have been submitted, in such manner as may be provided by law, to a vote of the voters of both counties, and shall have received a majority of those voting on the question in each." Tex. Const. Art. IX § 1.

**5.** In limited circumstances, equitable relief for violations of rights protected by the Texas Constitution may be had. Because Plaintiff

there is neither a statutory cause of action similar to that created by 42 U.S.C. § 1983 nor an implied cause of action like that recognized in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Hockaday v. Texas Department of Criminal Justice, Pardons and Paroles Division*, 914 F.Supp. 1439, 1445 (S.D.Tex.1996); *Gillum v. City of Kerrville*, 3 F.3d 117, 121–22 (5th Cir. 1993), *cert denied*, 510 U.S. 1072, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 146–50 (Tex.1995); *Jones v. City of Stephenville*, 896 S.W.2d 574, 577–78 (Tex.App.—Eastland 1995, no writ). Stated another way, "[t]here is no state constitutional tort." *Gillum*, 3 F.3d at 122 (quoting *Bagg v. University of Texas Med. Branch*, 726 S.W.2d 582, 584 n. 1 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.)). Furthermore, Texas does not recognize a common law cause of action for damages to enforce constitutional rights. *Bouillion*, 896 S.W.2d at 150.

Even if the Court were to assume for purposes of this motion that such a claim exists, the claim is nevertheless subject to dismissal because there is no evidence that the warrant and subsequent arrest of Zola Wilson violated his state constitutional rights.

It is for these reasons that summary judgment dismissing Plaintiff's damage claim for violation of the Texas Constitution must be granted.

## C. § 1983 Claims Against Hardin County

Plaintiff also brings a § 1983 action against Hardin County. Specifically,

Plaintiff alleges that: 1) Sheriff Cain failed to adequately investigate the background of Officer Vickery before hiring him as a narcotics investigator with the Sheriff's Department; 2) Sheriff Cain failed to properly train Officer Vickery; and 3) Officer Vickery issued an affidavit which led to the arrest of Zola Wilson which was not based on probable cause.

Section 1983 is the method by which federal rights elsewhere conferred are vindicated. 42 U.S.C. § 1983. To state a cause of action under § 1983, Plaintiff must allege that some person, acting under state or territorial law, deprived Zola Wilson of a federally protected right. *See Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir.1994). Section 1983 is not itself a source of substantive rights, but merely provides a method for redressing violations of rights elsewhere conferred. *See Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

In the seminal case *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court first recognized municipal[6] liability under § 1983 where the execution of a municipal policy or custom inflicts a constitutional deprivation. In recognizing municipal liability, the Court made it clear that a municipality may only be held liable where an action taken pursuant to official municipal policy or custom caused the constitutional violation. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). The Court emphasized that:

has not requested equitable relief, the Court need not consider such a claim here.

**6.** The term "municipality" contemplates a government entity below the state level. Har-

din County is a governmental entity below the state level. *See Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1394, 137 L.Ed.2d 626 (1997) (Souter, J., dissenting).

A municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Id.* Put another way, municipalities cannot be found vicariously liable for the constitutional torts of their agents: it is only where it can be fairly said that the municipality itself is the wrongdoer that the municipality can be found liable under § 1983. *See Collins*, 503 U.S. at 123, 112 S.Ct. 1061 (emphasis added).

 It is for this reason that § 1983 plaintiffs must, as an initial matter, identify a specific municipal policy or custom that inflicted the alleged violation of federal rights. Once a policy or custom has been identified, Plaintiff must then come forward with credible evidence of both culpability and causation. *See Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). By culpability, it is meant that the municipal policy or custom must have been adopted with "deliberate indifference" to federally protected rights. *Id.* Causation has come to mean that the actions of the municipality were the "moving force" behind the constitutional violation. *Id.*

### 1. No Evidence of a Policy or Custom Violating Federally Protected Rights

Plaintiff's § 1983 claim against Hardin County warrants dismissal because Plaintiff has not come forward with evidence of a Hardin County policy or custom that violates constitutional rights.

 The words "policy" and "custom" are terms of art which have specialized meanings within the framework of § 1983 jurisprudence. In this context, a policy is "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the munici-

pality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority." *See Eugene v. Alief I.S.D.*, 65 F.3d 1299, 1304–05 (5th Cir.1995). Polices are decisions of a duly elected municipal body or of an official whose acts may fairly be said to be those of the municipality. *See Bryan County*, 520 U.S. 397, 117 S.Ct. at 1388. The wrongful conduct of an officer without policymaking authority cannot be considered a municipal policy. *See Collins*, 503 U.S. at 121, 112 S.Ct. 1061.

 Section 1983 liability may also be predicated upon a custom, which has come to mean "a persistent, widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as … to represent municipal policy." *See Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir.1997). Where a plaintiff alleges a custom as opposed to a policy, "a single incident unaccompanied by supporting history will likely be an inadequate basis for inferring" the existence thereof. *See Boone v. City of Burleson*, 961 F.Supp. 156, 159 (N.D.Tex. 1997). "'Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability.'" *See Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1995). Rather, § 1983 plaintiffs must come forward with evidence of prior incidents of the conduct in question to prove a pattern or custom. *Id.*

 There is no evidence before the Court of a Hardin County policy or custom which violates federally protected rights. The record is devoid of any evidence of a decision by a Hardin County official with final policymaking authority to implement a policy that violates federal rights. Even

if the Court were to assume that Officer Vickery engaged in wrongful conduct, he is not an official policy maker for whom the County can be held liable. Evidence of a custom violating federal rights is also lacking, as Plaintiff has not come forward with a pattern of constitutional violations which is so widespread as to fairly represent municipal policy.

As such, Plaintiff's § 1983 claim against Hardin County warrants dismissal for failure to come forward with evidence of a policy or custom violating federal rights.

### 2. No Evidence that Hardin County Adopted Any Policy or Custom With "Deliberate Indifference" to Federally Protected Rights

Dismissal of Plaintiff's claims against Hardin County is also warranted because there is no evidence that the County adopted any custom or policy with "deliberate indifference" to the federal rights of those with whom the department comes into contact.

The Supreme Court first recognized that municipalities can be held liable under § 1983 "for constitutional violations resulting from ... failure to train municipal employees" in *City of Canton*, 489 U.S. 378, 380, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). There, the Court held that "only where failure to train reflects a 'deliberate' or 'conscious' choice by a municipality to endanger constitutional rights can a municipality be liable for such a failure under § 1983." *Id.* at 389, 109 S.Ct. 1197. It is only where "the need for more or different training is so obvious, and the inadequacies so likely to result in the violation of constitutional rights, that the [municipality] can reasonably be said to have been deliberately indifferent." *See City of Canton*, 489 U.S. at 390, 109 S.Ct. 1197. Deliberate indifference is a stringent standard of fault, requiring proof that

the municipality disregarded a known or obvious consequence of its actions. *See Bryan County*, 520 U.S. 397, 117 S.Ct. at 1391.

A plaintiff demonstrates the need for more or different training by coming forward with evidence of "at least a pattern of similar incidents in which the citizens were injured." *See Snyder*, 142 F.3d at 798. Put another way, proof of a single incident is, as a general matter, insufficient to hold a municipality liable for inadequate training. *Id.* Requiring plaintiffs to demonstrate a pattern in failure to train cases ensures that the municipality was on notice of the program's inadequacies, thereby warranting the assumption that the municipality's inaction reflects a conscious policy choice.

It is well settled that plaintiffs cannot merely allege that the training program represents a policy for which the municipality is responsible and thereby hold the municipality liable therefor. *See City of Canton*, 489 U.S. at 389, 109 S.Ct. 1197. Rather, the issue is whether the training program is adequate, and, if not, whether the inadequacies can fairly be said to represent municipal policy. *Id.* at 390, 109 S.Ct. 1197. Moreover, mere negligence on the part of the municipality in implementing a training program falls short of the deliberate indifference standard. *See Snyder*, 142 F.3d at 796.

Deliberate indifference is not shown by evidence that "a particular officer may be unsatisfactorily trained." *See City of Canton*, 489 U.S. at 390–91, 109 S.Ct. 1197. This is so because a particular officer's shortcomings may have resulted from factors other than an inadequate training program. *Id.* Nor will it suffice to prove that a violation could have been avoided if an officer had more or better training. *Id.* It is well settled that "ade-

quately trained officers make mistakes." *Id.* Therefore, a mistake on the part of an officer will not serve as evidence of an inadequate training program. *Id.*

██ Finally, the Supreme Court has expressed serious concerns over the prudence of allowing failure to train claims and has said that such claims only lie in "limited circumstances." *See Snyder*, 142 F.3d at 795. The Court cautioned against the federal judiciary engaging in an "endless exercise of second-guessing municipal employee training programs." *See City of Canton*, 489 U.S. at 392, 109 S.Ct. 1197. Courts are "ill suited" to the task and "serious questions of federalism" are implicated thereby. *Id.*

██ In response to Defendants' motion for summary judgment, Plaintiff came forward with no summary judgment evidence suggesting that Hardin County adopted any alleged customs or policies with "deliberate indifference" to the federal rights of those with whom the officers come into contact. Plaintiff has not shown a deliberate or conscious choice by Hardin County to violate constitutional rights. There is no evidence that Hardin County disregarded a known or obvious consequence of its actions which might cause constitutional violations. In fact, there is no evidence that any constitutional violations occurred, much less that the County was aware of or acquiesced in the commission thereof. Nor is there evidence before the Court that the need for more or different training was obvious or that the existing training program was likely to result in constitutional violations. To the contrary, the evidence establishes that the officer of whose conduct Plaintiff complains was extensively trained. The uncontroverted facts establish that Officer Vickery has over twenty (20) years experience as an undercover narcotics officer. He has received basic, intermediate, advanced and master's Texas Peace Officer's Certificates and is in compliance with all state mandated training requirements. .

Because Plaintiff cannot show deliberate indifference on the part of Hardin County, municipal liability does not lie. As such, Plaintiff's § 1983 claim against Hardin County must be dismissed.

## D. Defendants Cain and Vickery Are Immune From Suit in their Personal Capacities

Plaintiff also asserts § 1983 claims against Sheriff Cain and Officer Vickery in their individual capacities. Defendants seek summary judgment on the basis that they are immune from individual liability.

██ "Qualified immunity provides 'ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir.2000). When the defense of qualified immunity is raised, the Court conducts a bifurcated analysis. *Id.* "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id.* at 201, 121 S.Ct. 2151. Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions. *See Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)(citing *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523(1987)).

██ The Court concludes that Sheriff Ed Cain is immune from liability on the facts alleged. The uncontroverted facts

and admissible summary judgment evidence show that Cain was not present and did not participate in any aspect of the drug transaction, investigation, identification, arrest, and/or detention of Zola Wilson. There was no action on the part of Sheriff Cain that violated any federal protected right of Zola Wilson. Further, there is no evidence of an action on his part that can be said to be objectively unreasonable in light of clearly established law. Sheriff Cain has conclusively established each element of the affirmative defense of qualified immunity and is, therefore, entitled to judgment as a matter of law.

 The Court likewise concludes that Officer Vickery is immune from personal liability. Plaintiff contends that Zola Wilson was arrested without probable cause, which is a clearly established constitutional right. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Even if the court were to assume that probable cause for his arrest was lacking, it is well settled that qualified immunity shields officers from liability if a reasonable officer could have believed the arrest was lawful in light of clearly established law and the information possessed by the arresting officer. *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. *Id.* The qualified immunity privilege "gives ample room for mistaken judgments." *Hunter,* 502 U.S. at 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Mangieri v. Clifton,* 29 F.3d 1012, 1017 (5th Cir.1994).

 Officer Vickery's conduct was objectively reasonable. A reasonable officer could have believed the arrest was lawful in light of clearly established law and the information he possessed at the time of the arrest. Based on the uncontroverted facts and admissible summary judgment evidence it is clear that Officer Vickery's actions were reasonable and that the arrest and detention of Zola Wilson was based on probable cause. Therefore, this Court concludes that Defendant Vickery has conclusively established each element of his affirmative defense of qualified immunity and that judgment should be entered in his favor.

## CONCLUSION

Defendants have demonstrated that they are entitled to judgment as a matter of law because there is no genuine issue as to any material fact. Moreover, defendants Sheriff Cain and Officer Vickery have conclusively established that they are immune from liability in their individual capacities. As such, the Court concludes that Defendants' motion for summary judgment is meritorious and should be granted.

## ORDER

**IT IS THEREFORE ORDERED** that *Defendants' Motion for Summary Judgment* [Clerk's Doc. No. 18] is in all things **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the clerk is **DIRECTED** to close this case file.

**SO ORDERED.**