Joan Carol Ellis **ROBERTS**, Appellant,

v.

**TITUS COUNTY MEMORIAL HOSPITAL**, Appellee.

No. 06–04–00056–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 16, 2005.

Decided March 15, 2005.

 

Joan Carol Ellis Roberts, Mount Pleasant, pro se.

Jeffery C. Lewis, Atchley, Russell, Waldrop & Hlavinka, LLP, Texarkana, for appellee.

Before ROSS, CARTER, and CORNELIUS,* JJ.

## OPINION

Opinion by Justice ROSS.

Joan Carol Ellis Roberts sued Titus County Memorial Hospital, claiming she was denied a promotion and ultimately lost her job because she blew the whistle on wrongdoing by Hospital officials. The Hospital obtained a summary judgment against her claims. Roberts represented herself both at trial and on appeal.

**Procedural Issues**

Roberts advances a number of procedural issues in her appeal. She contends the Hospital was required to attack the sufficiency of her pleadings to allege suit within limitations by using special exceptions rather than by pursuing a summary judgment. The cases have almost universally accepted the concept that a party may use several different procedures to reach the same result. *See Drilltec Techs., Inc. v. Remp*, 64 S.W.3d 212, 214 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (holding subject matter jurisdiction can be attacked by plea to the jurisdiction, motion for summary judgment, and special exception, among other means). Indeed, there is one case assuming that, because limitations under the Texas Whistleblower Act [1] is often raised by summary judgment, then it must be raised by summary judgment. *Univ. of Houston v. Elthon*, 9 S.W.3d 351, 356–57 (Tex.App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.). Most courts have freely acknowledged that there is some confusion and considerable leeway in bringing this type of contention, and that no single type of pleading is required to raise the issue. *See Tex. S. Univ. v. Carter*, 84 S.W.3d 787, 790 (Tex. App.-Houston [1st Dist.] 2002, no pet.).

The issue was raised by summary judgment in this case. That has repeatedly been held at least an acceptable method of raising limitations, and occasionally as the only proper method. Error has not been shown.

Roberts also contends the court, in rendering its judgment, relied on information that was not a part of the summary judgment evidence. Her position appears to be that depositions and other discovery documents attached to the motion—but not referenced or incorporated in the motion—are not proper summary judgment evidence.

Rule 166a of the Texas Rules of Civil Procedure addresses summary judgment and the evidence to be considered by the court. *See* TEX.R. CIV. P. 166a. The Texas Supreme Court has interpreted this rule to mean that the summary judgment record consists of "evidence attached either to the motion or to a response." *Wilson v. Burford*, 904 S.W.2d 628, 629 (Tex. 1995); *accord Guinn v. Bosque County*, 58 S.W.3d 194, 199 (Tex.App.-Waco 2001, writ denied); *McIntosh v. NationsBank*, 963

---

* William J. Cornelius, C.J., Retired, Sitting by Assignment.

1. TEX. GOV'T CODE ANN. § 554.001, et seq. (Vernon 2004).

S.W.2d 545, 547 (Tex.App.-Houston [14th Dist.] 1997, writ denied). Thus, a trial court must grant a motion for summary judgment if the evidence attached either to the motion or to a response demonstrates the absence of any genuine issue of material fact and shows the movant's entitlement to judgment as a matter of law on the grounds set forth in the motion. *See Wilson,* 904 S.W.2d at 629.

All of the evidence of which Roberts complains was attached to the summary judgment motion. It was thus properly before the court, and this contention is without merit.

■ Roberts also contends the trial court erred by modifying the judgment without providing her with notice of the proposed changes. The trial court signed its first summary judgment April 6, 2004. It signed a second judgment April 20, 2004. The changes were the addition of language upholding "all of Defendant's objections" and assessing costs against Roberts. Roberts admits in her brief, and confirmed at oral argument, that the Hospital had no outstanding objections at the time the trial court signed its final summary judgment. Hence, the additional language upholding objections was mere surplusage. As for the additional language assessing costs against Roberts, the Hospital, as the successful party, was entitled to recovery of its costs. *See* Tex.R. Civ. P. 131. Because a trial court has plenary authority to modify, correct, or reform a judgment for thirty days after the judgment is signed (Tex.R. Civ. P. 329b(d)), it was appropriate for the trial court to include such language in its final judgment.

### Sufficiency of Hospital's Motion

■ Although not a specific complaint in Roberts' appeal, we note that the Hospi-tal's motion for summary judgment is not a model for clarity. It is three pages long and is supported by a number of exhibits and a lengthy brief. The motion seeks summary judgment based on Roberts' failure to prove all necessary elements of her claims. It states that all but count one of her claims are barred by limitations under the Whistleblower Act or that she did not file the necessary grievances required by the Act. It also states Roberts has not demonstrated that: she acted in good faith in making a report, the report involved a violation of law by an agency or employee, the report was made to an appropriate law enforcement authority, or she suffered discriminatory or retaliatory conduct by the employer as a result of the report. The motion concludes, "Therefore, pursuant to T.R.C.P. 166(a) [sic], there are no genuine issues as to any material fact as to the claim asserted by the Plaintiff."

The motion provides little guidance either for the trial court or for this Court in determining which arguments apply to which variation of summary judgment. Although it states there are no fact issues (one type of summary judgment), the argument made is more like a no-evidence motion under Tex.R. Civ. P. 166a(i). The attached trial brief complains that there is no evidence, but it also takes the position that, based on the pleadings, there are no fact issues on different aspects of the allegations. The arguments advanced in that brief make it further appear the motion was intended as a federal 12(b)(6)[2] motion seeking dismissal for failure to state a cause of action, which is not a viable claim for relief in Texas state courts.

■ Nevertheless, the Texas Supreme Court stated in *Binur v. Jacobo,* 135 S.W.3d 646, 651 (Tex.2004), that, although

---

2. *See* Fed.R.Civ.P. 12(b)(6).

separate arguments and headings in summary judgment motions would be extremely useful to the court and bar, such are not absolutely required by the rule. If a motion clearly sets forth its grounds and otherwise meets Rule 166a's requirements, it is sufficient. *Id.* The grounds for the Hospital's motion could have been more clearly set forth, but we cannot say the motion fails to meet the rule's requirements. Therefore, based on the Texas Supreme Court's articulations in *Binur* and an indulgent interpretation of the Hospital's motion, we deem the motion sufficient.

### Merits of the Appeal

Roberts contends in a number of different issues that summary judgment was erroneously granted because the Hospital's summary judgment evidence did not conclusively prove she failed to meet any element of the Whistleblower Act or that limitations had run.

### No Evidence Standards for Review

A no-evidence summary judgment is essentially a pretrial directed verdict. We therefore apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wal–Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex.2002). We must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Id.; Woodruff v. Wright,* 51 S.W.3d 727, 734 (Tex.App.-Texarkana 2001, pet. denied). We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 70–71 (Tex.App.-Austin 1998, no pet.). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner,* 953 S.W.2d at 711.

### Standard Summary Judgment Review

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distrib., Inc. v. McNamara,* 71 S.W.3d 308, 311 (Tex.2002); *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999). On appeal, the movant must show that there is no material fact issue and that the movant is entitled to judgment as a matter of law. *Limestone Prods. Distrib., Inc.,* 71 S.W.3d at 311; *Rhone–Poulenc, Inc.,* 997 S.W.2d at 223.

### General Background

The lawsuit is based on the application of the Whistleblower Act, which is designed to enhance openness in government and compel the government's compliance with law by protecting those who inform authorities of wrongdoing. *Castaneda v. Tex. Dep't of Agric.,* 831 S.W.2d 501, 503 (Tex.App.-Corpus Christi 1992, writ denied). The Act evidences two legislative purposes: (1) to protect public employees from retaliation by their employer when, in good faith, employees report a violation of the law, and (2) in consequence, to secure lawful conduct on the part of those who direct and conduct the affairs of public bodies. *Travis County v. Colunga,* 753 S.W.2d 716, 718–19 (Tex.App.-Austin 1988, writ denied). Because the Act is remedial in nature, it should be liberally construed to effect its purpose. *Castaneda,* 831 S.W.2d at 503;

*Davis v. Ector County,* 40 F.3d 777, 785 (5th Cir.1994).

### Roberts' Allegations at Trial

In her petition, Roberts alleged that, because she warned her superior and members of the Hospital's governing board that the planned purchase of a CT scanner was not being made by competitive bid as required by law, her superiors retaliated against her by failing to assign her to a newly created "lead tech" position, and ultimately terminated her employment. She also complains that the actions by the Hospital's officials were based on their disapproval of her efforts to professionalize her department. She contends this is shown by their written reactions to her efforts, dating back to 1991, to maintain or create a professional, safe, and fairly administered work environment.

### Analysis

■ The Hospital does not contest the description of the Hospital as a local governmental entity, and admits Roberts was a public employee. That element of the Whistleblower Act is therefore not an issue. Although the Hospital does contend Roberts' actions were not taken in good faith, the evidence on that is in dispute; thus, a fact issue would exist.[3] Similarly, although the Hospital argues there was no evidence of an adverse personnel action, the summary judgment proof as described above clearly shows a dispute in the evidence on that matter as well.

The controlling issues raised by the Hospital are that Roberts provided nothing to show that: 1) any specific applicable law was violated—thus no evidence of any illegal conduct, and alternatively, if a law was so violated, 2) Roberts never reported such violation to "appropriate law enforcement authority." In the absence of either element, a plaintiff suing under the Whistleblower Act cannot prevail.[4]

■ In this case, the dispositive question is whether, assuming a law was violat-

---

**3.** The Hospital suggests that, because Roberts could not specify the exact statute that was violated by a failure to obtain competitive bids, she did not act in good faith. There is an alternative argument that, if no law existed to be broken, then good faith is immaterial, and the specific requirements of the Act are not met. There is some dispute as to whether such a law exists in this case. The Hospital has suggested in a post-argument letter brief that, because the Hospital district was created before the codification of the current Health and Safety Code, and thus created by Legislative act rather than by the strictures of the current Code provisions, the competitive bidding requirements set out in the Code do not apply to this entity. That argument is not entirely persuasive, because the entirety of the former statutes that governed the operation of all hospital districts have been repealed and recodified in the Health and Safety Code. *See* TEX.REV.CIV. STAT. ANN. art. 4478, et seq., *repealed by* Act of May 18, 1989, 71st Leg., R.S., ch. 678, 1989 Tex. Gen. Laws 2230 (effective Sept. 1, 1989) (now recodified as the Texas Health and Safety Code). That matter, however, was not adequately raised or briefed by either party to justify full analysis in this opinion, and because of our disposition of this appeal, we will not conclusively address it here. Given the complexity of the law, and noting the Hospital's own careful avoidance of stating that "no law was violated," we will not conclude Roberts was barred from taking the good-faith position that the Hospital was engaged in activities outside the bounds of the law.

**4.** We also recognize that yet another oddity exists here: the Hospital did not ultimately carry through with its purchase outside the bounds of competitive bidding, but withdrew the purchase order. It appears the Hospital did then submit the purchase to competitive bidding and purchased the scanner recommended by Roberts. One legitimate question is thus whether Roberts actually reported a violation of the law—or whether, by making the report, Roberts saved the Hospital from possible liability by pointing out its impending violation—but by doing so before the violation occurred, she placed herself outside the protection of the Whistleblower Act.

ed, Roberts reported that violation to an appropriate law enforcement authority so that the Whistleblower Act protections would apply to her situation. The Whistleblower Act provides that an appropriate law enforcement authority is a governmental entity authorized to "regulate under or enforce the law alleged to be violated in the report." TEX. GOV'T CODE ANN. § 554.002(b)(1) (Vernon 2004). Alternatively, an appropriate law enforcement authority is a governmental entity authorized to "investigate or prosecute a violation of criminal law." TEX. GOV'T CODE ANN. § 554.002(b)(2) (Vernon 2004). The language controlling our review was set out recently.

> Under the statutory definition, it is clearly not enough that a government entity has *general* authority to regulate, enforce, investigate, or prosecute. Rather, to determine if a governmental entity qualifies as an "appropriate law enforcement authority," we are bound to construe that term as the statute defines it. *See* TEX. GOV'T CODE § 311.011(b); *Faircloth*, 898 S.W.2d at 274; *Tijerina*, 846 S.W.2d at 827. And the statute defines that term as a governmental entity authorized to regulate under or enforce *"the law alleged to be violated in the report,"* or to investigate or prosecute *"a violation of criminal law." See* TEX. GOV'T CODE § 554.002(b). In other words, the particular law the public employee reported violated is critical to the determination.

*Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 319–20 (Tex.2002).

The courts have held that a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:

- regulate under or enforce the law alleged to be violated in the report
- investigate or prosecute a violation of criminal law.

*Id.* at 319; 3 J. HADLEY EDGAR, JR. & JAMES B. SALES, TEXAS TORTS AND REMEDIES § 45.06[13](c) (2003).

In this case, taking all allegations in the light most favorable to the nonmovant, Roberts simply did not report the alleged violation to an appropriate law enforcement authority. She reported it to her superior, and ultimately to members of the Hospital board. Although it is reasonable to conclude that, like all individuals, these hospital officials have a duty to obey the law, as set out in *Needham*, that is not the same as being a governmental entity authorized to regulate under or enforce "the law alleged to be violated in the report," or to investigate or prosecute "a violation of criminal law." *See Needham*, 82 S.W.3d at 319.

Roberts notes that in her affidavit she states she called the Texas Attorney General's office,[5] and it informed her that she first needed to go through the grievance process. Roberts failed to adduce summary judgment evidence that this contact with the Attorney General's office satisfied the underlying requirement that she make a complaint to a law enforcement authority, and as a result of that action alone, the Hospital acted unlawfully by terminating or otherwise affecting her employment. Roberts further failed to provide summary judgment evidence that the Attorney General's office is authorized to regulate under

---

**5.** The record indicates Roberts called the Attorney General's office twice. She says she was told in 1991 she would have to lose her job before the Whistleblower Act might apply, and then again at an unspecified date after the purchasing incident when she was told correctly that she had to pursue a grievance process under the Act.

or enforce "the law alleged to be violated in the report." *Id.*

Therefore, under the statute, Roberts has neither pled nor provided summary judgment proof of facts that would support this required element of the action, and a no-evidence summary judgment was properly rendered on this basis.

We affirm the judgment.